UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER MIRZA,<br><br>Plaintiff,<br><br>v.<br><br>HOLLAND AMERICA LINE INC, et. al.,<br><br>Defendants. | CASE NO. C11-1971 MJP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 11.) Having reviewed the motion, Plaintiff's response (Dkt. No. 16), Defendants' reply (Dkt. No. 22), and all related papers, the Court GRANTS the motion. Because there is no genuine factual dispute as to Defendants' actual or constructive knowledge of the risk creating-condition, the ship's whistle, Defendants are entitled to judgment as a matter of law.

**Background**

Plaintiff Jennifer Mirza brings a claim for negligence against Holland America Line Inc., HAL Antillen N.V. and Holland America Line N.V. for injuries she suffered while aboard a Holland America cruise. (Dkt. No. 1.)

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 1

In January 2011, Mirza cruised to Mexico aboard the MS Oosterdam. On the morning of January 25, 2011, while the ship docked in Puerto Vallarta, Mexico, Mirza, along with her fiancé, sat on the observation deck. No other passengers were present on the deck. An emergency drill for crew only was scheduled for that morning. The previous night, the Oosterdam provided passengers, including Mirza, with a written notice regarding the drill.

Just before the drill, the ship's captain announced over the public address system:

> in a few moments time, at 10:30 there will be an abandon ship drill for crew members. For this, the general emergency alarm will be sounded. Please do not be alarmed as this is an exercise for crew members and no action is required by our guests onboard. Attention all crew attention all crew: On hearing the general emergency alarm crew of life rafts 13, 15, 17, 19, 21, 23, crew of life rafts 7, 11, 13, 15 and raft lowering squad of raft crane 4 and 6 report to your assembly station. In addition, all newly embarked crew since last San Diego report to raft station 1. Thank you for your attention.

(Dkt. No. 12-1.) Mirza acknowledges that she heard a "somewhat garbled" warning and understood "there was going to be a drill happening." (Dkt. No. 20-1, Mirza dep. 34-20-25.) The Oosterdam emergency alarm then sounded. Upon hearing the first whistle, Mirza put her hand to her right ear. On the second whistle, she ran from the deck. In total the whistle sounded eight times, but Mirza was on the observation deck for only two.

Mirza did not initially complain to the crew of the Oosterdam about the whistle or her hearing-loss. Four days later, she reported to a crew member that the ship's horn had gone off and she was having trouble hearing in her right ear. Mirza then visited the ship's infirmary. The ship's doctor, Donald Lum, M.D., diagnosed Mirza's right ear as suffering "acoustic trauma" and recommended further tests once she disembarked. The ship's physician documented the visit and his diagnosis in a Guest Accident Report.

On November 28, 2011, Mirza sued Holland America Line Inc., HAL Antillen N.V. and Holland America Line N.V. for negligence. (Dkt. No. 1.) Mirza alleged:

> On and prior to January 25, 2011, defendants, and each of them failed to take reasonable care under the circumstances, and as a result were negligent in selecting, maintaining, placing and sounding the vessel horn in such a manner as to expose passengers on the vessels Observation deck to levels of sound capable of causing injury, and in failing to warn plaintiff that the vessel horn would be sounded and of the danger to passengers seated in the vessels Observation Deck.

(Dkt. No. 1 at 3.) Mirza suffers permanent hearing loss, requiring medical treatment.

On August 30, 2012, Defendants moved for summary judgment arguing there is no genuine dispute that it had actual or constructive notice of the dangerous condition, the whistle, which allegedly caused Plaintiff's hearing loss.

For this Court's consideration of the summary judgment motion, the parties offered evidence regarding the whistle and the prior incidents aboard other Holland America cruises.

The Oosterdam's whistle was placed on the smokestack during the construction of the ship. After construction, Lloyd's Register, one of the classification societies, certified the ship as sea worthy and meeting required regulations. The Oosterdam is registered under the flag of the Netherlands. Each year, as part of renewal of the registration and for insurance purposes, Lloyd's Register and a representative of the Netherlands conduct week-long drills to evaluate the safety system and ensure seaworthiness. These inspections include listening to the smokestack whistle during emergency drills. According to the Oosterdam's Chief Officer, if the Oosterdam failed the safety inspection, it could not sail. Other governmental and non-governmental organizations, including the U.S. Coast Guard, also annually inspect the ship. No flag state or classification system has criticized the Oosterdam's whistle, including its volume.

After Plaintiff filed this litigation, the parties engaged experts to test the whistle. On May 6, 2012, Plaintiff's expert Arthur Faherty recorded a meter reading of the whistle's sounding as

between 98.7 dB and 103.2 dB.  Defendants' expert also tested the whistle and recorded meter readings between 102 dB(A) and 103.4 dB(A).  Peak sound level measured 122.2 dB(A).

In the past five years, only two passengers sailing on Holland America Cruises suffered injury resulting from the noise of a ship's alarm system or whistle.  In the first incident, a passenger accidently poked himself in the eye when startled by the sounding of the ship's whistle.  In the other incident, a passenger complained about the loudness of the public address speaker, which he claimed damaged his left ear.  The incident, however, did not involve the ship's whistle.  Defendants have no other recorded incidents or complaints regarding the ship's whistle in the past five years.

## Analysis

### A. Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Galen v. Cnty. of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. Celotex, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his ease that he must prove at trial" in order to withstand summary judgment. Galen, 477 F.3d at 658.  The non-moving party "must present affirmative evidence to make this showing." Id. Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine issues of material fact exist are insufficient," and a mere scintilla of evidence supporting a party's position is also inadequate. Id.

**B. Actual or Constructive Notice**

For a ship owner to be liable for negligence, it must "have had actual or constructive notice of the risk-creating condition." Keefe v. Bahamas Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989); see also Monteleone v. Bahamas Cruise Line, Inc., 838 F.2d 63, 65 (2nd Cir.1988) ("a ship owner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them."). Constructive notice "requires that a defective condition exist for a sufficient interval of time to invite corrective measures." Monteleone, 838 F.2d at 65.

Defendants argue for dismissal because Mirza cannot prove Defendants had had actual or constructive notice of the risk-creating condition, the volume of the ship's whistle. Mirza counters that summary judgment is improper because international regulations put Defendants on constructive notice of the dangers posed by the ship's whistle. In the alternative, she claims Defendants' record-keeping is so defective, it gives rise to a triable fact as to whether they had notice of prior injuries caused by the ship's whistle. Neither of Mirza's theories establishes Defendants had actual or constructive knowledge. This Court GRANTS summary judgment.

1. International Regulations

Mirza argues Defendants had constructive knowledge of the whistle's potential to cause hearing loss because of two different sets of industry standards.

    a. International Maritime Organization Convention on the International Regulation for Preventing Collisions at Sea, 1972

Starting with the International Maritime Organization Convention on the International Regulation for Preventing Collisions at Sea, 1972 (COLGREG's), Annex III (hereinafter "Annex III"), Mirza claims tests performed by experts show the Oosterdam's whistle exceeds the recommended decibel levels. Annex III section e states:

> A whistle shall be placed as high as practicable on a vessel, in order to reduce interception of the emitted sound by obstructions and also to minimize hearing

damage risk to personnel. The sound pressure level of the vessel's own signal at listening posts shall not exceed 110 dB(A) and so far as practicable should not exceed 100 dB(A).

(Dkt. No.18 at 7.) Annex III contains no requirement to test the whistle.

Mirza claims the expert tests indicate decibel levels above 103 dB(A) and peak sound pressures above 122 and 123 dB(A). Thus, "[b]y its terms Annex III warns HAL that sound pressure from the ships [sic] whistle, in excess of 100dB (A), increase the risk of hearing damage to its own personnel. HAL can not [sic] realistically claim that the knowledge imputed to it by Annex III did not provide notice of the potential hazard to passengers from the very same sounds." (Dkt. No. 16 at 11.)

Even if the Court were to find that the Oosterdam whistle exceeded the decibel levels permitted in Annex III, as Mirza claims, no genuine dispute exists. Mirza's argument turns on the false premise that Defendants knew or should have known the whistle exceeded the 110 dB(A) permitted by the regulation. The evidence establishes that the ship's whistle, a Super-Tyfon MKT 150/110, was mounted on the ship during construction where it has remained. Annually governmental and non-governmental organizations inspected the ship including listening to the whistle. The Oosterdam has never received any feedback after these inspections indicating the whistle was too loud or that any harm could result from its use. Likewise, Defendants never received passenger complaints about the noise volume of the whistle (except Plaintiff's). To suggest, as Mirza does, that Defendants knew the alleged defective condition existed or that they should have known of the condition, based on these regulations, is simply a leap in the factual record.

Mirza's reliance on <u>Galentine v. Holland America</u>, 333 F.Supp. 2d 991 (W.D. Wash 2004), and <u>Cook v. Royal Caribbean</u>, 2012 U.S. Dist. Lexis 67977 (S.D. Fl., May 15, 2012), is also inadequate to establish the knowledge element of her claim. In <u>Galentine</u> and <u>Cook</u>

evidence of non-binding industry standards was admitted to establish the standard of care. Contrary to Mirza's representations, <u>Galentine</u> and <u>Cook</u> do not stand for the proposition that industry standards establish actual or constructive knowledge of a risk-creating condition.

      b.  Guidelines Regarding Noise Levels Aboard Ships

Mirza's second argument, that other regulations, the "Guidelines Regarding Noise Levels Aboard Ships," ("Noise Code") put Defendants on notice of the potential harm caused by the loud noises is equally flawed.

First, the Noise Code could not have put Defendants on notice because it does not apply to passenger areas of cruise ships like the observation deck of the Oosterdam where this incident occurred. The Noise Code explicitly does not apply to "passenger cabins and other passenger areas, not being work areas." (Dkt. No. 20-6 at 5). Moreover, the Noise Code makes clear that it is intended to address "seafarers" sustained exposure to noise volume as it relates to work conditions—not to passengers on a pleasure cruise. (<u>Id.</u> at 6.) And, Plaintiff's own expert recognized the attenuated application of the Noise Code to this case: "[w]hile the Noise Code itself is only specifically applicable to seafarers, as the circumstances of this injury make clear, passengers on the OOSTERDAM can be exposed to the same hazardous noise levels in the same spaces as seafarers." (Dkt. No. 19 at 5.) Because it does not apply to passenger areas, the regulation does not— and cannot—create a genuine issue of material fact as to Defendants' knowledge of the risk-creating condition posed by the whistle on the observation deck.

Second, under the reasoning discussed in the preceding section, Mirza fails to show that even if the regulations applied to passenger areas of cruise ships, Defendants ought to have known about or discovered the dangerous condition. The Oosterdam annually passed numerous inspections, which included the sounding of the whistle. Defendants had never received notice or had reason to suspect the whistle was deficient or could harm passengers. Even viewed in the

light most favorable to Plaintiff, the regulations do not create a genuine factual dispute, which precludes summary judgment.

2. Record Keeping System

Mirza also claims a triable issue of fact exists because Defendants' system of recording complaints excludes informal conversations between crew members and passengers. Mirza's argument is unpersuasive.

The record shows Defendants extensively record all incidents requiring medical treatment aboard the ship as well as requests made by former passengers seeking recoupment of medical expenses. Defendants keep these records for five years. Mirza does not offer any evidence on which a jury could infer that Defendants' record-keeping gives rise to a triable fact as to actual or constructive knowledge of the whistle. The absence of complaints does not give rise to a genuine factual dispute.

Mirza fails to show any genuine dispute exists as to whether Defendants had actual or constructive knowledge the volume of the whistle created a dangerous condition. The Court GRANTS the motion and DISMISSES the negligence claim.

3. Motions to Strike

Defendants move to strike the Declaration of Don Henderson, arguing it is untimely. Given the Court's grant of summary judgment, the motion is moot.

Mirza moves to strike portions of four declarations, contending they fail to meet evidentiary rules for admissibility. The Court disagrees, and DENIES the motion. Block v. City of L.A., 253 F.3d 410, 418–19 (9th Cir. 2001)("[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")

**Conclusion**

1     Because there is no genuine issue of material fact as to whether Defendants had actual or

2 constructive knowledge of the unreasonably dangerous condition, the volume of the ship's

3 whistle, this Court GRANTS summary judgment (Dkt. No. 11) in favor of Defendants.

4     The clerk is ordered to provide copies of this order to all counsel.

5     Dated this 6th day of November, 2012.

                                                          Marsha J. Pechman
                                                          Chief United States District Judge